**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br> v. <br><br> HARLEY INTERNATIONAL (CAYMAN) LIMITED, <br><br> Defendant. | Adv. Pro. No. 09-1187 (BRL) |

## ORDER GRANTING ENTRY OF SUMMARY AND DEFAULT JUDGMENTS AGAINST HARLEY INTERNATIONAL (CAYMAN) LIMITED

This matter came before the Court on the motion (the "Motion") of Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.*, and the estate of Bernard L. Madoff, for an order granting entry of: (1) summary judgment against Defendant Harley International (Cayman) Limited ("Harley") on Counts Two and Three of the Complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure; and

(2) default judgment on all Counts of the Complaint, for failure to plead or otherwise defend the above-captioned action, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding by Rule 7055 of the Federal Rules of Bankruptcy Procedure; and the Court having jurisdiction to consider the Motion and the relief requested therein; and the Court having reviewed the record before it, including: the Complaint, the Affidavit of Service, Clerk's Entry of Default, Notice of Motion, Motion, Memorandum of Law, Statement Of Facts As To Which There Is No Genuine Issue To Be Tried, Affidavits of Joseph Looby and Elizabeth Scully, together with the exhibits thereto, and having determined that the Trustee articulated good cause for the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion and accompanying Memorandum of Law establish just cause for the relief granted herein; the Court hereby finds and concludes as follows:

**Findings of Fact**

1. Irving H. Picard ("the Trustee") has been appointed under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), as the trustee for the liquidation of the Bernard L. Madoff Investment Securities LLC ("BLMIS"). (Case No. 08-10791 Docket No. 4; Case No. 09-1187 Docket No. 1, Complaint ¶ 10.)[1]

2. BLMIS is a limited liability company incorporated under the laws of New York that was wholly owned and controlled by Bernard L. Madoff ("Madoff"). (Affidavit of Elizabeth

---

[1] Harley has not answered or otherwise responded to the Complaint, its time to answer or otherwise respond has expired and they are in default. (Docket No. 6.) As a result, this Court treats the factual allegations contained in the Complaint as true. *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993)("factual allegations are taken as true in light of the general default"); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)(entry of default "constitutes a concession of all well-pleaded allegations of liability"); *see also Time Warner Cable of New York City, a Div. of Time Warner Entm't Co., L.P. v. Barnes*, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

2

A. Scully in Support of the Trustee's Motion for Default and Summary Judgments Against Harley International (Cayman) Limited ("Scully Aff."), Ex. A at 23:14-18; Complaint ¶ 17.)

3. Harley is an international business company incorporated under the laws of the Cayman Islands. (Scully Aff. Ex. B; Complaint ¶ 31.)

4. Harley is now in insolvent liquidation, and is represented by Joint-Liquidators, Nicolas Matthews and Mark Longbottom with Kinetic Partners (Cayman) Limited. (Scully Aff. Ex. C.)

5. BLMIS was founded in 1960 and operated during the relevant time frame from its principal place of business at 885 Third Avenue, New York, New York, USA. (Scully Aff. Ex. A at 23:14-18; Complaint ¶ 17.)

6. Madoff was the founder, chairman, and chief executive officer of BLMIS and ran BLMIS together with several family members and a number of additional employees. (Scully Aff. Ex. A at 25:6-11; Complaint ¶ 17.)

7. BLMIS had three divisions: (1) investment advisory (the "IA Business"); (2) market making; and (3) proprietary trading. (*Id.*; Affidavit of Joseph Looby in Support of the Trustee's Motion for Default and Summary Judgments Against Harley International (Cayman) Limited ("Looby Aff. ¶__."), at ¶ 7.)

8. Madoff purported to operate the IA Business as a legitimate and successful investment business in which BLMIS received monies from private and institutional investors and invested the same in stocks and options pursuant to a "split-strike conversion strategy" devised by Madoff, which purportedly generated profits that would from time to time be paid out to investors upon their request for a redemption. (Scully Aff. Ex. A at 24:9-26:18; Looby Aff. ¶ 8; Complaint ¶ 18.)

9. In reality, the IA Business was a fraudulent Ponzi scheme operated by Madoff in order to obtain money from investors under false pretenses. (Scully Aff. Ex. A at 24:9-26:18; Looby Aff. ¶ 9; Complaint ¶¶ 19-22.)

10. On March 12, 2009, Madoff admitted in open court that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" while pleading guilty to an 11 count criminal indictment filed against him, which carried a maximum sentence of 150 years in prison. (Scully Aff. Ex. A at p. 23:14-18.)

11. On June 29, 2009, Madoff was sentenced to serve the statutory maximum of 150 years in federal prison, after admitting, *inter alia*, the existence of a Ponzi scheme since the 1990s.[2] (*Id.* at p. 25:12-13; *United States v. Madoff*, 09 CR 213, Docket Nos. 95, 100.)

12. The IA Business was a fraud on a massive scale. The IA Business engaged in no material investment activity and generated virtually no investment returns. The "investments" made by customers were in fact simply commingled into a single bank account held at the New York Branch of JP Morgan Chase & Co. ("JP Morgan"), account number 000000140081703 (the "703 Account"). Madoff and his associates used this account as though it were their own personal bank account. (Scully Aff. Ex. A at 24:9-22; Looby Aff. ¶ 9.)

13. The purported investment "returns" paid to investors by BLMIS were nothing more than payments made from funds paid into the scheme by new and existing investors. (Scully Aff. Ex. A at 24:9-22; Looby Aff. ¶ 10.) This is also true of the redemptions made by Harley, which consisted of funds that had been taken from other investors for the benefit of Harley. (Looby Aff. ¶ 10.)

---

[2] The Trustee believes, based on his investigation to date, that the Ponzi scheme goes back farther than the 1990s. Nevertheless, for purposes of this ruling, whether the Ponzi scheme goes back farther in time is not a material fact that need be determined.

14. Harley received nothing more than other victims' stolen monies. (*Id.*)

15. On December 11, 2008 (the "Filing Date"), the day of Madoff's arrest, the SEC filed a complaint in the United States District Court for the Southern District of New York (the "District Court") under claim number 08 CV 10791, (the "SEC Action"). (Case No. 08-10791 Docket No. 1; Complaint ¶ 7.)

16. On December 12, 2008, the Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. as receiver for the assets of BLMIS. (Case No. 08-10791 Docket No. 2; Complaint ¶ 8.)

17. On December 15, 2008, pursuant to SIPA § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they fell due and, accordingly, its customers needed the protections afforded by SIPA. (Case No. 08-10791 Docket No. 4; Complaint ¶ 9.) Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA, which in pertinent part: (a) appointed the Trustee for the liquidation of the business of BLMIS pursuant to 15 U.S.C. § 78eee(b)(3); (b) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to 15 U.S.C. § 78eee(b)(3); and (c) removed the case to this Bankruptcy Court 15 U.S.C. § 78eee(b)(4). (Case No. 08-10791 Docket No. 4; Complaint ¶ 10.)

18. The Trustee is in the process of marshalling BLMIS's assets, and the liquidation of BLMIS's assets is well underway. Such assets, however, will not be sufficient to reimburse the customers of BLMIS for the full value of their principal investments. (Trustee's Amended Third Interim Report at ¶ 159, Case No. 08-01789 Docket No. 2207; Complaint ¶ 13.)

19. On or around April 17, 1996, Harley (or its predecessor, Harley International Limited) executed a Customer Agreement, an Option Agreement, and a Trading Authorization Limited to Purchases and Sales of Securities (the "Account Agreements") and delivered such papers to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York. (Looby Aff. Ex. 2 at MADTSS00249330-332, MADTSS00249328-329; MADTSS00249334, MS00869306; Complaint ¶ 32.)

20. Thereafter, Harley maintained an account with BLMIS, which was designated account 1FN094 (the "Account"). (Looby Aff. ¶¶ 6, 11, Ex.2; Complaint ¶ 32.) That account, however, was by and large a fiction. (Looby Aff. ¶¶ 11-13.) Substantially all investors' monies deposited into BLMIS's IA Business, including Harley's, were comingled into the 703 Account. (Looby Aff. ¶¶ 9 and 14.)

21. Between April 24, 1996 and December 11, 2008, Harley "invested" in excess of $2 billion with BLMIS via 133 separate wire transfers into the 703 Account. (Looby Aff. Exs. 3-5; Complaint ¶ 34.) Harley was one of many such "investors" with BLMIS whose funds were commingled into the 703 Account. (Looby Aff. ¶ 11.)

22. Between April 24, 1996 and December 11, 2008, Madoff caused BLMIS to make payments in excess of $1 billion to (or for the account of) Harley (the "Transfers"), including the following:

    (1)    $20,000 on November 27, 1998;

    (2)    $6,000,000 on June 23, 2004;

    (3)    $50,000,000 on February 27, 2008;

    (4)    $40,000,000 on March 26, 2008;

    (5)    $56,000,000 on May 12, 2008;

(6) $31,800,000 on June 2, 2008;

(7) $120,000,000 on June 27, 2008;

(8) $197,000,000 on July 10, 2008;

(9) $147,000,000 on September 3, 2008;

(10) $120,000,000 on September 23, 2008;

(11) $40,000,000 on September 30, 2008;

(12) $180,000,000 on October 16, 2008;

(13) $10,000,000 on October 22, 2008;

(14) $29,000,000 on November 5, 2008; and

(15) $46,000,000 on December 9, 2008.

(Looby Aff. ¶ 11, Ex. 2 at MS00869308, and Ex. 5 at JPMSAB0001715, JPMSAB0004125, JPMSAB0004346, JPMSAB0004375, JPMSAB0004261, JPMSAB0004307, JPMSAB0004216, JPMSAB0004524, JPMSAB0004556, JPMSAB0004569, JPMSAB0004489, JPMSAB0004498, JPMSAB0004420, JPMSAB0004084; Complaint ¶¶ 40-42, Ex. A.)

23. Thirteen of the transfers, the transfers made between February 27, 2008 and December 9, 2008, were made during the two years prior to the Filing Date (the "Two Year Transfers"), and total $1,066,800,000. (*Id.*)

24. Of the Two Year Transfers, the transfers between September 23, 2008 and December 9, 2008, totalling $425,000,000, were made during the 90 days prior to the Filing Date (the "Preference Period Transfers"). (*Id.*)

25. At the time of each of the Transfers, BLMIS was insolvent because the amount retained by BLMIS was insufficient to pay its obligations to creditors. (Complaint ¶¶ 29, 54, 67, 79; Looby Aff. ¶ 15.)

26. On May 12, 2009, the Trustee commenced proceedings against Harley by filing a complaint against it in this Court. (Docket No. 1., Complaint.)

27. On May 15, 2009, Harley was properly served with process in accordance with Bankruptcy Rule 7004. (Docket No. 3, Affidavit of Service.)

28. Despite having actual knowledge of the pending Complaint, Harley failed to file an answer, move or otherwise respond. (Scully Aff. at ¶ 6; Docket No. 5, Request to Enter Default.)

29. On July 8, 2009, the Clerk of this Court made an entry of default against Harley. (Docket No. 6.)

## Conclusions of Law

1. This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (F), (H) and (O).

2. Service of process on Harley was sufficient, because Harley was served with the summons and complaint by mail and personal delivery, in accordance with Bankruptcy Rule 7004(a)(1), which incorporates Fed. R. Civ. P. 4(f) and 4(h), which incorporate The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, 20 U.S.T. 361.

3. The exercise of personal jurisdiction over Harley is consistent with the Constitution and laws of the United States. This Court has statutory "long arm" personal jurisdiction over Harley under Bankruptcy Rule 7004(f).

4. This Court has specific jurisdiction over Harley. *Picard v. Cohmad Sec. Corp. ETC (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 80-81 (Bankr. S.D.N.Y. 2009); *see also In re Deak & Co., Inc.*, 63 B.R. 422, 428 (Bankr. S.D.N.Y. 1986)(finding that an

international defendant must have minimum contacts in the forum state to establish personal jurisdiction). Harley specifically sought out the United States as a place to do business when it opened an account with BLMIS. Further, the Transfers at issue arose out of business transactions tied to Harley's securities account with BLMIS in New York. Defendants have had sufficient minimum contacts with the United States, and the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. The exercise of personal jurisdiction over Harley therefore satisfies the Fifth Amendment due process requirement.

5. Transfers to Harley in the following amounts were avoidable preferential transfers under sections 547, 550(a) and 551 of the Bankruptcy Code:

    a. $120,000,000 on September 23, 2008;

    b. $40,000,000 on September 30, 2008;

    c. $180,000,000 on October 16, 2008;

    d. $10,000,000 on October 22, 2008;

    e. $29,000,000 on November 5, 2008; and

    f. $46,000,000 on December 9, 2008.

6. Transfers to Harley in the following amounts were avoidable fraudulent transfers under sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3):

    a. $50,000,000 on February 27, 2008;

    b. $40,000,000 on March 26, 2008;

    c. $56,000,000 on May 12, 2008;

    d. $31,800,000 on June 2, 2008;

    e. $120,000,000 on June 27, 2008;

  f.  $197,000,000 on July 10, 2008;

  g.  $147,000,000 on September 3, 2008;

  h.  $120,000,000 on September 23, 2008;

  i.  $40,000,000 on September 30, 2008;

  j.  $180,000,000 on October 16, 2008;

  k.  $10,000,000 on October 22, 2008;

  l.  $29,000,000 on November 5, 2008; and

  m.  $46,000,000 on December 9, 2008.

WHEREFORE it is hereby

ORDERED that the Trustee's Motion is granted in its entirety; and it is further

ORDERED that the Clerk of the Court is directed to enter judgment in favor of the Trustee and against Harley as follows:

1. Summary Judgment is entered against Harley:

  (a) on Count Two of the Complaint, pursuant to sections 547, 550(a), and 551 of the Bankruptcy Code: (1) avoiding the Preference Period Transfers in the amount of $425,000,000, (2) directing that the Preference Period Transfers in the amount of $425,000,000 be set aside by Harley, and (3) permitting the recovery by the Trustee of the Preference Period Transfers in the amount of $425,000,000, or the value thereof, from Harley for the benefit of the estate of BLMIS; and

  (b) on Count Three of the Complaint, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code: (1) avoiding the Two Year Transfers in the amount of $1,066,800,000, (2) directing that the Two Year Transfers in the amount of $1,066,800,000 be set aside by Harley, and (3) permitting the recovery by the Trustee of the Two Year Transfers in

the amount of $1,066,800,000, or the value thereof, from Harley for the benefit of the estate of BLMIS; and

    2.    Default judgment is entered against Harley in the additional amount of $6,020,000, for a total judgment against Harley in the amount of $1,072,820,000.

Dated: New York, New York
       November 10, 2010

                                     /s/Burton R. Lifland
                                     HONORABLE BURTON R. LIFLAND
                                     UNITED STATES BANKRUPTCY JUDGE